**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **D'ANDRE GREER, K96509,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **ANTHONY D. WILLIS,** | ) | |
| **LATOYA HUGHES,** | ) | |
| **M. OTTENSMEIER,** | ) | |
| **SHEMONEY,** | ) | |
| **MARC R. HEMPEN,** | ) | |
| **J. SCHANZ,** | ) | **Case No. 26-cv-180-DWD** |
| **ROBERT W. GEARHART,** | ) | |
| **CURTIS DALLAS,** | ) | |
| **C/O BAKER,** | ) | |
| **RYAN A. LYNCH,** | ) | |
| **ANTHONY B. JONES,** | ) | |
| **C/O AGNE,** | ) | |
| **JOHN DOES 1-4,** | ) | |
| **BRIAN L. TOLIVER,** | ) | |
| **CARLOS F. NAVARRETE,** | ) | |
| **JEREMIAH L. BROWN,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff D'Andre Greer, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Lawrence Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center (Menard). Plaintiff alleges that the defendants have violated his rights by failing to afford him due process during four disciplinary proceedings in 2025, and by reclassifying him to a "level E" "extreme high risk" status without due

process. Plaintiff's Complaint (Doc. 1) was dismissed for failure to state a claim (Doc. 9). Plaintiff's Amended Complaint (Doc. 11) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**The Amended Complaint**

The original and amended complaints bear significant similarities, in fact, the first four pages of factual allegations are an exact replica of the original complaint. As with the original complaint, Plaintiff again centers the lawsuit on four disciplinary tickets issued in 2025, and a security level reclassification to "Level E," all which he alleges lacked due process and were done with a retaliatory intent. Because Plaintiff's allegations throughout the amended complaint are often redundant, the Court will offer a brief recitation of the facts essential to the legal analysis.

Plaintiff was already in segregation when he received the first disciplinary ticket at issue on April 1, 2025. He alleges that Defendants Ottensmeier, Shemoney, Hempen, Schanz, and Gearhart falsified the disciplinary report that led to this conviction by planting contraband in his cell. He complains that after the contraband was allegedly discovered, John Doe officers came to his cell to move him, took him first to internal

affairs, and then placed him behind a steel door. At internal affairs, he alleges Defendants Hempen, Gearhart, Walker, and Agne were present. He faults Agne for taking his watch, and Hempen for threatening him if he did not cuff up. Plaintiff alleges the ticket was retaliation for grievances, and he specifically mentions he had filed a grievance on September 7, 2024. He complains that on April 2, 2025, Defendant Dallas interviewed him and indicated no one should have moved him from behind a steel door in the first place. Plaintiff complains that at the hearing he was not shown the contraband, Defendants Lynch and Jones were not clear about the nature of the contraband, and Lynch paused the hearing to investigate further. Plaintiff blankly alleges he "wasn't given a proper hearing," adding there was no proof of the contraband. (Doc. 11 at 14).

As a result of the April 1, 2025, incident, Plaintiff received a year in segregation. He alleges he spent the time behind a steel door under "real harsh isolation" that involved little to no out of cell time. He also seems to allege he has two hours out of cell per week. Plaintiff further complains he could not use the phone, he could not have video or in-person visits, and he permanently lost the ability to communicate with relatives who died during his segregation term. He alleges that as a result he has experienced emotional distress, depression, anxiety, paranoia, nightmares, and more.

Plaintiff next faults Defendant Ottensmeier for issuing a false disciplinary report on July 1, 2025. He faults Defendant Gearhart for the same on July 9, 2025, alleging Ottensmeier, Garcia, Gearhart, and Agne acted improperly in relation to a cell shakedown. And, he faults Defendant Schanz with issuing a false disciplinary report on September 11, 2025. All three of these disciplinary reports concern the allegation that

synthetic cannabinoids were located in Plaintiff's property. Plaintiff challenges all three on the premise that the lab reports from the Illinois State Police did not contain verbiage he believes was required by the Illinois Administrative Directives. Plaintiff does not say anything about the disciplinary hearings associated with these tickets. The tickets attached to the amended complaint all reflect that he was present at the hearings and made statements to the committee on his behalf. (Doc. 11 at 73-75, 80, 84-85). The continued conditions of segregation that Plaintiff described in association with the first ticket are the same for these three tickets.

Aside from the disciplinary tickets, Plaintiff also repeats the contention that he was reclassified as a "Level E" extreme risk offender without due process. He specifically contends that Defendant Baker informed him of the change, told him to go get a new identification photo taken, and conceded that Defendants Willis and Hughes were discriminating against him and did not give him a proper hearing. Plaintiff complains that there is an Administrative Directive process for reclassifications that was not followed, and that the reclassification was unconstitutional and retaliatory. He says that the consequences he suffered from the reclassification were the same as those he described in association with segregation. As relief, Plaintiff seeks a declaratory judgment and monetary compensation. He alleges that his rights have been violated under the First, Fifth, Eighth, and Fourteenth Amendments.

## Analysis

Plaintiff's amended complaint is still insufficient to proceed as pled. The primary focus of Plaintiff's complaint remains disciplinary proceedings in April, July, and

September of 2025. All four disciplinary proceedings resulted in terms of segregation ranging from 3 months to a year, with an aggregate total of two years and three months. Plaintiff did not lose good time credit. To establish a due process claim related to disciplinary proceedings, an inmate must demonstrate: (1) the deprivation of a liberty interest; and (2) the procedures he was afforded were constitutionally deficient. *Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019). In considering the process that must be afforded to a plaintiff, the Seventh Circuit has recently indicated in a pair of cases that an inmate is only entitled to informal due process if he does not lose good-time credit. Informal due process requires only that an inmate is provided (1) notice of the reasons for his placement in segregation, (2) and an opportunity to present his views in a written statement or hearing. *Ealy v. Watson*, 109 F.4th 958, 965 (7th Cir. 2024) (inmate spent five months in segregation exposed to cold temperatures, dirty cells, and faulty plumbing, the Court declined to decide if a liberty interest was invoked and instead just determined that due process was afforded); *Adams v. Reagle*, 91 F.4th 880, 895 (7th Cir. 2024) (majority opinion of St. Eve, J.) (finding that an inmate is only entitled to informal due process for any disciplinary proceeding that does not result in the loss of good-time credit, and concluding an inmate received the process he was due despite spending over two years in segregation and being reclassified). The Seventh Circuit has also indicated that the disciplinary decisionmaker must remain impartial. *See e.g.*, *Torres v. Brookman*, 155 F.4th 952, 959 (7th Cir. 2025) (finding that an inmate who received notice, an opportunity to present his position, and an impartial decision maker, received all the process due prior to three months of disciplinary segregation); *Leiser v. Bretzel*, 2026 WL 3218812 (7th Cir.

Oct. 27, 2026) (unpublished decision finding that an inmate received notice, an opportunity to present his views, and an impartial committee).

Beginning with the April 2025 disciplinary ticket and hearing, Plaintiff complains that numerous defendants participated in falsifying the ticket concerning the alleged discovery of contraband in his cell. To the extent that Plaintiff faults Defendants Ottensmeier, Shemoney, Hempen, Schanz, Gearhart, or Dallas for falsifying the discipline, an inmate cannot maintain a false discipline claim if he ultimately receives a proper disciplinary hearing. *See Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984) (finding that an inmate cannot maintain a claim alleging that the basis for his discipline was false where he receives the procedural due process protections in a disciplinary hearing). In this case, Plaintiff does not allege that he lacked notice of the disciplinary hearing or an opportunity at the hearing to present his views, and the final disciplinary report indicates he made a statement on his behalf. (Doc. 11 at 51).

Plaintiff alleges that Defendants Lynch and Jones, his hearing officers, should not have found him guilty because they lacked sufficient proof of the contraband and never even told him or showed him what it was, but these assertions do not plausibly suggest impartiality. Mere dissatisfaction with a disciplinary outcome, or contentions that the prison's internal rules were not followed is not enough to demonstrate that Plaintiff was deprived of due process. Under the informal due process standards, Plaintiff received notice, a chance to be heard, and written findings, which is all that was required of the disciplinary process.

As for the two July 2025 infractions and the September 2025 infraction, he complains that prison employees did not follow the Illinois Administrative Directives or internal prison rules in relation to the disciplinary incidents. Specifically, as to the two July and one September of 2025 tickets, he complains that per the prison rules the lab findings from the Illinois State Police should have contained specific language about the detection of synthetic cannabinoids. But, as the Court already explained, the failure to follow prison or state rules does not equate to a claim under § 1983. *See e.g.*, *Scott v. Edinburgh*, 346 F.3d 752, 760 (7th Cir. 2003) (Section 1983 protects inmates from constitutional violations, not violations of state laws or departmental regulations). To the extent Plaintiff alleges some aspect of the disciplinary charges were falsified, he would need to demonstrate that the eventual disciplinary proceedings were faulty. He cannot make a showing of this nature because he does not allege that he lacked notice of the charges or opportunities to be heard. The exhibits to his complaint demonstrate that he received notice of the tickets and chances to make written or verbal statements. (Doc. 11 at 73-75, 80, 84-85). Plaintiff does not identify the adjustment committee members and does not allege impartiality of the committee members themselves. Thus, he received adequate informal due process for the two July and one September of 2025 tickets.

To the extent that Plaintiff continues to pursue a theory of widespread retaliation, he still has not identified discrete incidents of protected speech sufficient to support such a claim. At most, he repeats the allegation from his original complaint in his amended complaint that he submitted a grievance on September 7, 2024, which he suspects could have formed a basis for retaliation. The discipline at issue in this case did not begin until

April of 2025, approximately seven months after the grievance. Plaintiff does not explain the contents of the grievance in detail, and he does not explain why he believes it formed a basis for a chain of retaliatory actions by more than a dozen prison staff. The claim remains threadbare and speculative, and it is insufficient to proceed.

Finally, Plaintiff again complains that he was reclassified in April of 2025 to a "level E" without being afforded the sorts of hearings dictated by the prison's administrative directives. As the Court already explained, a violation of internal prison rules does not equate to a constitutional violation. To the extent Plaintiff pursues a related due process assertion, inmates do not generally have a protected liberty interest in their security classification. *See e.g.*, *Healy v. Wisconsin*, 65 Fed. App'x 567, 568 (7th Cir. 2003) ("inmates do not have a protected liberty interest in a particular security classification."); *Siddiqui v. Lane*, 763 F.Supp. 284, 285-86 (N.D. Ill. Feb. 13, 1991) (it is well-settled that Illinois inmates do not have a protected interest in their prisoner security classification and thus no action can be maintained under § 1983 related to a change in security classification). Plaintiff now alleges that the change subjected him to continued placement in restrictive housing, which impacted his physical and mental health based on a lack of out of cell activities, limited or no contact with his family, and enhanced cell visits.

Even if the conditions were worse, and the worse conditions could somehow invoke a protected liberty interest, Plaintiff has not adequately linked the reclassification to personal actions of any of the named defendants, nor has he described the sort of process he believes he deserved. At best, Plaintiff complains that Defendant Baker told

him Defendants Willis and Hughes were not giving him the process afforded under the Illinois Administrative Directives, but this is essentially nothing more than speculation. Baker commenting on a reclassification does not demonstrate that he personally had a role in any wrongdoing, and Baker's passing comment that Willis or Hughes was involved does not cast a light on what those two actually personally did that was allegedly improper.

Plaintiff also claims that his reclassification has subjected him to 57 months of continuous segregation, but it is not clear when he began counting or if the reclassification is really the cause of his continued segregation at a new facility. Notably, Plaintiff admitted he was already serving a term of segregation when he received the contraband discipline in April of 2025. The contraband discipline netted him a year of segregation, and his subsequent three tickets added another 15 months of segregation. Assuming Plaintiff began his 27 months of segregation for the discipline on April 1, 2025, he would still be serving disciplinary time through July of 2027. On the whole, Plaintiff has not plausibly demonstrated that his security classification change should have afforded him separate rights from those he received with the disciplinary proceedings, and he has not demonstrated that the reclassification as opposed to the discipline is the actual cause for his prolonged term of segregation. He also has not adequately identified personal involvement of Defendants Baker, Willis, and Hughes, whom he faults for the reclassification. Thus, Plaintiff's allegations concerning his security reclassification are insufficient to proceed.

Finally, Plaintiff named Defendants Brian Toliver, Carlos Navarrete, and Jeremiah Brown—all Lawrence employees—as defendants in this case but he never mentioned them in the factual allegations. Naming a party without making any personal allegations against them is insufficient to state a claim. *See e.g.*, *Black v. Lane*, 22 F.3d 1395, 1401 n. 8 (7th Cir. 1994) (affirming the dismissal of a defendant who was named in the complaint but was not discussed in the factual allegations).

For all of the foregoing reasons, the Court does not find it necessary to invite a second amended pleading in this case. *See e.g.*, *Zimmerman v. Bornick, 25 F. 4th 491, 494 (7 Cir. 2022)* (amendment would be futile or otherwise unwarranted when "a plaintiff has already had multiple chances to cure deficiencies."). The Court has afforded Plaintiff an opportunity to amend, and it has explained to Plaintiff the basic gaps his pleadings had that would need to be addressed. *See Orr v. Shicker*, 147 F.4th 734, 741-42 (7th Cir. 2025) (finding that a district court did not abuse its discretion by denying leave for a third or fourth amended complaint where the court had given multiple opportunities for deficiencies to be cured, and deficiencies were not cured). Having reviewed Plaintiff's allegations twice, the Court does not believe that a further opportunity to amend would lead to material changes that could support viable claims. Thus, Plaintiff's complaint will now be dismissed for failure to state a claim, and Plaintiff will incur a strike under 28 U.S.C. § 1915(g).

## Disposition

**IT IS HEREBY ORDERED THAT** Plaintiff's Amended Complaint (Doc. 10) is dismissed without prejudice as insufficient to state a claim. Plaintiff's Motion for Status

(Doc. 11) is **GRANTED** by the issuance of this Order. The Clerk of Court shall enter judgment and close this case.

**IT IS SO ORDERED.**

Dated: November 19, 2026

DAVID W. DUGAN
United States District Judge